COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

SUPERIOR COURT
CIVIL ACTION NO. 03-01452

PAUL S. GASS,
     Plaintiff,

v.

FEDERAL INSURANCE COMPANY, part of the
CHUBB GROUP OF INSURANCE COMPANIES,
SAMPSON INSURANCE AGENCY,
ANDERSEN WINDOW CORPORATION,
and BROCKWAY SALES PLYWOOD
     Defendants.

## AMENDED COMPLAINT AND JURY CLAIM

### PARTIES

1. Plaintiff, Paul S. Gass (Gass) is an individual residing at 21R Sleepy Hollow Road, Gloucester, County of Essex, Commonwealth of Massachusetts.

2. Defendant Federal Insurance Company, part of the Chubb Group of Insurance Companies (Chubb), is a corporation, state of incorporation unknown, with a principal place of business at One Financial Center, Boston, County of Suffolk, Commonwealth of Massachusetts.

3. Defendant Sampson Insurance Agency (Sampson) is a corporation, state of incorporation unknown, with a principal place of business at 97 Libbey Industrial Parkway, Suite 110, Weymouth, County of Norfolk, Commonwealth of Massachusetts.

4. Defendant Andersen Window Corporation (Andersen) is a corporation with a principal place of business in Bayport, Minnesota which at all material times did business within the Commonwealth of Massachusetts.

5. Defendant Brock's Plywood Sales (Brock's) is a corporation, with a principal place of business at Rochester, New Hampshire which at all material times did business within the Commonwealth of Massachusetts.

## GENERAL ALLEGATIONS

6. On January 29, 1993, Chubb issued a homeowner's insurance policy to Gass covering the single family home known alternatively as 19R or 21R Sleepy Hollow Road, Gloucester, Massachusetts (The Home).

7. Said policy has been in effect, all premiums having been paid, without interruption, to the date hereof.

8. On June 22, 1992, Linda Pritchard, an agent or employee of Chubb conducted a replacement cost appraisal of The Home.

9. Said replacement cost figure was $645,000.00.

10. On or shortly before 3/28/02, Gass learned of severe water damage suffered at The Home. He learned that the efficient proximate cause was wind-driven rain.

11. On said date, Gass reported said damage to Chubb and requested coverage and a payment for his losses.

12. On 5/21/02, Chubb denied that there was any coverage under the policy.

12A. On 5/21/02, Chubb expressly stated that it was not aware of any other policies covering this loss.

13. Chubb's denial relied upon the following language which allegedly was in Gass' 2002 policy:

> 4. "Faulty planning, construction or maintenance. We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. Planning includes zoning placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. Construction includes materials, workmanship, and parts or equipment used for construction or repair.'

14. Gass' original policy had the following language instead of that quoted at Paragraph 13, supra:

> **Negligent planning, construction or maintenance**. We do not cover any loss caused by the negligent acts, errors, or omissions of you or any other person in planning, construction, or maintenance. **This exclusion applies only when the loss is caused directly or indirectly by a peril excluded in this section.** It does not matter whether the negligent acts, errors, or omissions take place on or off the insured property. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property, and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair. (Emphasis supplied)

15. Gass never received a written amendment changing the language quoted in Paragraph 14, supra.

16. Gass never was otherwise informed of said amendment until after he notified Chubb of his loss.

17. At all times material, Sampson was the agent for Chubb regarding this policy and Gass' representative for numerous insurance needs.

18. Upon discovery of the loss in 2002, Gass sought the assistance of Sampson.

19. Sampson agreed to assist Gass in perfecting his claim.

20. At Gass' request, Sampson represented that it did not have in its files or computers the above-mentioned policy amendment.

21. Sampson represented that it sent out, except on two occasions, only new declaration pages each year since the inception of the policy.

22. The policy states that there can be no amendment unless it is in writing.

23. The amendments for the two (2) years are not relevant to this claim.

24. Chubb's denial of coverage relied heavily upon its engineer's inspection report, which had numerous material and relevant factual errors.

25. On June 26, 2002, Gass sent to Chubb the G.L. ch. 93A statutory demand letter. A copy of same is attached hereto.

26. Said letter was received on 6/27/02.

27. Gass incorporates each and every allegation stated in said ch. 93A demand letter as if specifically set forth herein.

28. On 7/26/02, Gass received Chubb's reply to his ch. 93A demand letter.

29. Chubb, in its reply, continued to deny that there is any coverage for Gass' losses.

31. Chubb did not conduct any further investigation or change its coverage posture after receipt of said ch. 93A demand letter.

32. By claiming that there is no coverage, Chubb has made any order of reference referred to in G.L. ch.175, section 99 a nullity.

33. Under G.L. ch.175, section 99, an insurance company issuing fire insurance (homeowner's) policies in this Commonwealth must use the standard form of policy as follows:

> In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss...

34. Chubb did not use said language. It included the following language instead:

> If you and we fail to agree on the amount of loss, we will <u>defer</u> to a three member board of referees whose decision will be binding. (Emphasis supplied).

35. The policy, under the caption "Legal action against us", states:

> If a board of referees is asked to determine the amount of loss....

4

36. By choosing the deferential language quoted in Paragraphs 34 and 35, supra, Chubb has waived its right of reference under Ch. 175, section 99 and case law.

[See Moran et al v. Phoenix Insurance Company, 7 Mass. App.Ct. 822; 390 NE 2d 1139 (1979), and Anthony v. Amica Mutual Insurance Company, 1999 Mass. Super. Lexis 249 (1999)].

37. Said language shows that a referral was not meant to be a condition precedent to maintaining this lawsuit.

38. In 1991, Gass replaced all of the windows in The Home with Andersen "high performance" windows.

39. Gass was told by an Andersen agent that the windows would withstand 80-90 m.p.h. winds.

40. Brock's assembled the windows for Andersen.

41. Brock's did not follow Andersen's "narrow mullion & transom joining instructions" by not applying any silicone to the mandated and other areas of the windows and more.

42. The windows supplied in 1991 were defective.

43. In either 1991 or 1992, two windows and a door window were replaced by Andersen. They were defective.

44. In either 1996 or 1997, additional windows were replaced by Andersen as they were defective.

45. Gass discovered in October of 2001 that there was extensive damage to the inside and outside of The Home.

46. Gass contacted Andersen shortly thereafter.

47. In Anderson's response to Gass' complaint, dated April 18, 2002, it failed to disclose that the windows that had been installed had defective glass.

48. At all material times Anderson knew or should have known of said defective glass.

49. On or about June 25, 2002, Andersen's agent, Moynihan Lumber of Beverly, Mass. delivered forty-four (44) panel windows as well as eighteen (18) windows (nine sets of 2: one large and one panel which were mulled).

5

49A. Andersen certified, through it's agent Moynihan Lumber, that the windows met Gass' contractor's specifications.

49B. Andersen demanded a release of all claims in exchange for the windows, which Gass refused to sign. He paid for the windows under protest.

50. The eighteen non-panel windows were manufactured without silicone.

51. On June 25, 2002, an Andersen representative did a "collapsed Glass inspection" and noted on the form that of 102 windows, thirty-five (35) needed to be replaced because the "gap" was inadequate.

## COUNT I
### (Chubb - G.L. ch. 93A and 176D)

52. Paragraphs 1-51 are incorporated as if fully set forth herein.

53. Chubb misrepresented pertinent facts or insurance policy provisions relating to coverages at issue.

54. Chubb refused to pay claims without conducting a reasonable investigation based upon all available information.

55. Chubb failed to reinvestigate when further facts were given to it.

56. Chubb acted in an oppressive and unconscionable manner.

57. Chubb failed to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

58. Chubb compelled insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

59. Chubb failed to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

60. Chubb relied upon an insurance policy unrelated to Gass' policy.

61. The aforesaid conduct constitutes unfair or deceptive acts or practices in the conduct of trade or commerce declared unlawful by Chapter 93A, section 2 and the regulations issued under paragraph (c) of said section 2, including without limitation 940 CMR 3.16.

62. As a result of the aforesaid conduct of Chubb, Gass has suffered losses of money or property.

63. The acts or practices of Chubb resulting in the loss described above were done willfully or knowingly in violation of M.G.L. Chapter 93A, section 2, and Chapter 176D.

64. As stated aforesaid, Gass sent to Chubb via certified mail, postage prepaid, return receipt requested, a written demand for relief identifying Gass and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered.

65. Chubb answered the demand for relief; however, did not make a good faith offer of settlement. Chubb's refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated M.G.L. Chapter 93A, section 2, and Chapter 176D.

66. Gass in his ch. 93A demand letter stated:

> We hereby put you on notice that none of the above causes [stated by Chubb]
> were the legal or efficient proximate cause of the loss.

67. Chubb utterly relied upon one engineer, at its peril, to deny coverage. It had a duty to further investigate the facts, errors and law to comply with the requirements of Chapters 93A and 176D and it failed to do so causing damage to Gass.

**WHEREFORE,** Gass requests judgment against Chubb as follows:

a. The Court order damages recoverable under G. L. c. 93A, sections 2 and 9, together with Plaintiff's costs, interest and reasonable attorney's fees;

b. The Court order treble the total of the actual damages established in all Counts.

c. Such other and further relief as the Court deems meet and just.

7

## COUNT II

### (Sampson - Breach of Contract)

68. Paragraphs 1-67 are incorporated as if fully set forth herein.

69. Sampson agreed to act as Gass' agent in assisting him in favorably resolving Gass' claim.

70. Sampson held itself out as an insurance specialist in pursuing any claim Gass may have had.

71. Gass and Sampson had a long-standing business relationship with respect to this and other properties.

72. Sampson knew or should have known that Gass relied upon it for all his homeowner, liability, commercial, property and car insurance needs and, therefore, a continuing relationship existed over a long period of years.

73. Gass relied upon the representatives of Sampson.

74. Sampson agreed to assist Gass in processing the claim.

75. There existed an implied contract that Sampson would properly pursue Gass' claims.

76. Sampson did not so pursue the claims and, therefore, broke the contract.

77. Gass was damaged thereby.

**WHEREFORE,** Gass prays for judgment against Sampson for his damages and costs.

## COUNT III
### (Andersen – G. L. c. 93A)

78. Paragraphs 1-77 are incorporated as if fully set forth herein.

79. Andersen supplied knowingly defective products to Gass without disclosing the same.

80. Andersen intentionally withheld knowledge that the 1991 windows had bad glass.

81. Andersen on at least two (2) occasions had representatives sent to The Home to review Gass' complaints and continued to fail to disclose that the windows were defective.

82. In fact, Andersen offered to replace a portion of the defective windows only in exchange for a release of all demands by Gass.

8

83. Gass refused to waive his rights and purchased the replacement windows himself

84. The aforesaid conduct constitutes unfair or deceptive acts or practices in the conduct of trade or commerce declared unlawful by Chapter 93A, section 2 and 9.

85. As a result of the foresaid conduct of Andersen, Gass has suffered losses of money or property.

86. The acts or practices of Andersen were done willfully or knowingly in violation of M.G. L. Chapter 93A, section 2.

87. As stated aforesaid, Gass sent to Andersen via certified mail, postage prepaid, return receipt requested, a written demand for relief (copy attached hereto) identifying Gass and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered.

88. Gass discovered, on or about October, 2001, that because of wind-driven rain, there was extensive damage to all areas of his home both inside and out.  The damage included. but is not to be limited thereto, the following:
    1. De-laminated and warped sheathing;
    2. Rotted structural framing behind de-laminated areas;
    3. Hardwood flooring and interior finishes of the second story had numerous areas of significant water damage where large areas of the floors were saturated and some totally rotted out;
    4. Hardwood flooring on the left elevation was water damaged to the point that it has collapsed.  The floor assembly, including plywood sheathing, was severely water damaged and the main beam was compromised;
    5. Most window sills on left were completely rotted;
    6. Wall cracks were evident in numerous locations;
    7. All of the shingles and most plywood sheathing needed to be replaced;
    8. Studs, supporting joists and flooring need to be replaced;
    9. Replacement gypsum wall boards, fiberglass insulation and plywood sub floors were required;
    10. All windows needed to be removed and replaced or repaired;
    11. Rotted headers were removed and replaced.

89. Andersen answered the demand for relief; however, it did not make a good faith offer of settlement.  Andersen's refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated M.G.L. Chapter 93A, section 2 and 9.


**WHEREFORE**, Gass requests judgment against Andersen as follows:

    a. The Court order damages recoverable under G. L. c. 93A, sections 2 and 9,

    together with Plaintiff's costs, interest and reasonable attorney's fees;

9

b. The Court order treble the total of the actual damages established in all Courts.

c. Such other and further relief as the Court deems meet and just.

## COUNT IV
### (Brock's – G.L. c. 93A)

90. Paragraphs 1-89 are incorporated as if fully set forth herein.

91. Brock's acted as Andersen's agent.

92. In 1991, Brock's mulled the windows it assembled.

93. Brock's knew or should have known it mulled the windows improperly.

94. Brock's knowingly supplied defective products to Gass without disclosing the same.

95. Brock's failed to comply with Andersen specifications in not using silicone where mandated.

96. The aforesaid conduct constitutes unfair or deceptive acts or practices in the conduct of trade or commerce declared unlawful by Chapter 93A, section 2 and 9.

97. As a result of the foresaid conduct of Brock's, Gass has suffered losses of money or property.

98. The acts or practices of Brock's resulted in the loss described above were done willfully or knowingly in violation of M.G. L. Chapter 93A, section 2.

99. Gass sent to Brock's via certified mail, postage prepaid, return receipt requested, a written demand for relief (copy attached hereto) identifying Gass and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered.

100. Gass discovered, on or about October, 2001, that because of wind-driven rain, there was extensive damage to all areas of his home both inside and out. The damage included, but is not to be limited thereto, the following:
   1. De-laminated and warped sheathing;
   2. Rotted structural framing behind de-laminated areas;
   3. Hardwood flooring and interior finishes of the second story had numerous areas of significant water damage where large areas of the floors were saturated and some totally rotted out;
   4. Hardwood flooring on the left elevation was water damaged to the point that it has collapsed. The floor assembly, including plywood sheathing, was severely water damaged and the main beam was compromised;
   5. Most window sills on left were completely rotted;

10

6. Wall cracks were evident in numerous locations;

7. All of the shingles and most plywood sheathing needed to be replaced;

8. Studs, supporting joists and flooring need to be replaced;

9. Replacement gypsum wall boards, fiberglass insulation and plywood sub floors were required;

10. All windows needed to be removed and replaced or repaired;

11. Rotted headers were removed and replaced.

101. Brock's did not make a good faith offer of settlement. Brock's refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated M.G.L. Chapter 93A, section 2 and 9.

**WHEREFORE**, Gass requests judgment against Brock's as follows:

a. The Court order damages recoverable under G. L. c. 93A, sections 2 and 9, together with Plaintiff's costs, interest and reasonable attorney's fees;

b. The Court order treble the total of the actual damages established in all Counts.

c. Such other and further relief as the Court deems meet and just.

Plaintiff claims a jury for all counts.

**PAUL S. GASS**

By his attorney,

Stuart I. Rosnick
BBO # 429620
15 Front Street
Salem, MA 01970
(978) 741-1130

The Plaintiff, Paul S. Gass states that the information set forth in this Complaint is of his personal knowledge and that he believes the information to be true.

Paul S. Gass

11

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS                                                    Date: 12/19/03

Then personally appeared Paul S. Gass, Plaintiff herein, and made oath that the information set forth in this Complaint is true of his own personal knowledge and that he believes the information to be true.

Notary Public
Commission Expires: 2/25/05

STUART I. ROSNICK

12

P. 9
Gass/Chubb

Mr. Gass is ready and willing, upon compliance with the above, to assist you with any subrogation claims you may have with others because of this loss.

Thank you.

Very truly yours

Stuart I. Rosnick

SIR/ekr
CERTIFIED MAIL, RETURN RECEIPT REQUESTED

cc: Mr. Paul Gass
    Sampson Insurance

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2003-CV-01452B

PAUL S. GASS,
            Plaintiff,                )
                                       )
v.                                   · )
                                       )
CHUBB GROUP OF INSURANCE COMPANIES,    )
and SAMPSON INSURANCE AGENCY           )
            Defendants.                )

A TRUE COPY
_____
DEPUTY ASS'T CLERK

## NOTICE OF FILING NOTICE OF
## REMOVAL OF ACTION TO FEDERAL COURT

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on December 23, 2003, defendant Federal Insurance

Company filed in the United States District Court for the District of Massachusetts a Notice of

Removal of Action to Federal Court. A true and accurate copy of the Notice of Removal is

attached hereto as Exhibit 1.

FEDERAL INSURANCE COMPANY misnamed in the
Complaint Chubb Group of Insurance Companies

By its attorneys,

John E. Tener, Esq., BBO#563791
John E. O'Brien, Jr., Esq., BBO#640982
**ROBINSON & COLE LLP**
One Boston Place, 25th Floor
Boston, MA 02108-4404
Tel (617) 557-5900

DATED: December 24, 2003

BOST1-814949-1

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2003, I served a copy of the foregoing *Notice Of Filing Notice Of Removal Of Action To Federal Court* on the interested parties to this action by mailing a copy of same, postage prepaid, to:

Stuart I. Rosnick
15 Front Street
Salem, MA 01970

_____
John E. O'Brien, Jr.

2